**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brandy M. Huber,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>　　　　Defendant. | No. CV10-8043-PCT-DGC<br><br>**ORDER** |

Plaintiff Brandy Huber applied for supplemental security income on August 3, 2005. Doc. 20, Tr. 99-104. The application was denied. Tr. 72-73, 78-82. Hearings before an Administrative Law Judge ("ALJ") were held in July 2008 and January 2009. Tr. 344-78. The ALJ issued a written decision on July 22, 2009, finding Plaintiff not disabled within the meaning of the Social Security Act. Tr. 19-29. This decision became Defendant's final decision when the Appeals Council denied review. Tr. 5-8. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Doc 1. For reasons that follow, the Court will reverse Defendant's decision and remand the case for an award of benefits.

**I.     Standard of Review.**

The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's decision to deny benefits "should be upheld unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194,

1198 (9th Cir. 2008). In determining whether the decision is supported by substantial evidence, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.*

## II.     Analysis.

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show (1) she is not currently working, (2) she has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her from performing her past work. At step five, the Commissioner must show that the claimant has the RFC to perform other work. 20 C.F.R. § 416.920.

Plaintiff has met her burden at steps one and two: she has not worked since the alleged disability onset date (Tr. 20, 28 ¶ 1), and she has severe depressive disorder and borderline intellectual functioning (Tr. 21, 28 ¶ 2). At step three, the ALJ found that Plaintiff's impairments do not meet or equal a listed impairment. Tr. 22-23, 28 ¶ 3. The ALJ concluded at steps four and five that while Plaintiff cannot return to her past work as a cashier and stocker, she has the RFC to perform certain unskilled jobs. Tr. 28, 29 ¶ 11.

Plaintiff argues that the ALJ erred at step three in finding that her impairments do not meet the listing for mental retardation. Doc. 21 at 17-20. Plaintiff further argues that the ALJ failed to properly weigh medical source opinions (*id.* at 20-25), failed to properly evaluate her credibility (*id.* at 25-28), and relied on flawed vocational expert testimony (*id.* at 28-29). Defendant contends that the ALJ did not err and his decision is supported by substantial evidence. Doc. 24.

As explained more fully below, the Court concludes that Defendant's decision must be reversed, and the case remanded for an award of benefits, because the ALJ erroneously found that Plaintiff does not meet the listing for mental retardation. The Court accordingly need not address Plaintiff's other challenges to Defendant's decision.

### A.     Listing 12.05 – Mental Retardation.

"The Commissioner has promulgated a 'Listing of Impairments' that are 'so severe

that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform [her] past relevant work or any other jobs.'" *Frazier v. Astrue*, No. CV-09-3063-CI, 2010 WL 3910331, at *3 (E.D. Wash. Oct. 4, 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995)). Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation, that is, "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. It also contains four sets of criteria in paragraphs A through D. *Id.* A claimant's impairment meets Listing 12.05 "where it satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria[.]" *Id.*, § 12.00(A).

The ALJ stated that "there is no evidence that [Plaintiff] meets any of the 'C' criteria of the listings." Tr. 22. Not so. The paragraph C criteria for listing 12.05 require "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). The ALJ himself recognized that Plaintiff "has a valid verbal IQ score of 71, a performance IQ [score] of 65 and a full-scale IQ score of 66." Tr. 23; *see* Tr. 329. "[T]he listings specify that when verbal, performance, and full scale scores are provided by IQ tests, the ALJ must consider the lowest of these scores." *Rowens v. Astrue*, No. CIV S-09-0163 GGH, 2010 WL 3036478, at *3 (E.D. Cal. Aug. 2, 2010) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c)); *see Lewis v. Astrue*, No. C 06-6608 SI, 2008 WL 191415, at *6 (N.D. Cal. Jan. 22, 2008); *Gustafson v. Astrue*, No. CIV S-08-0612 DAD, 2010 WL 1267787, at *4 (E.D. Cal. Mar. 31, 2010). Plaintiff's valid performance IQ of 65 and full-scale IQ of 66 satisfy the first prong of the paragraph C criteria. *See Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987) (IQs ranging from 69 to 76 satisfied the first prong of listing 12.05(C)).

This Circuit held in *Fanning* that a physical or other mental impairment "imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Id.* "This, in other words, is

1 the definition of a 'severe' impairment." *Rowens*, 2010 WL 3036478, at *3; *see* 20 C.F.R.
2 § 416.920(c); SSR 85-28, 1985 WL 56856, at *2-3 (1985). The regulations themselves make
3 clear that for purposes of paragraph C, the additional impairment imposes a significant work-
4 related limitation of function where it is found to be "severe" at step two of the evaluation
5 process. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). "Thus, under *Fanning* and the
6 [r]egulations, the ALJ's step two finding that Plaintiff's depressive disorder is severe,
7 satisfies the second prong of [the paragraph C criteria]." *Frazier*, 2010 WL 3910331, at *5;
8 *see Gustafson*, 2010 WL 1267787, at *6.

9 The ALJ erroneously concluded that "the record does not show [Plaintiff] has a
10 history of deficits in her adaptive functioning" as required to meet the diagnostic description
11 of mental retardation. Tr. 23. The introductory paragraph of listing 12.05 requires
12 manifestation of mental retardation "during the development period; i.e., the evidence
13 demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt.
14 P, App. 1, § 12.05. The requirement of early onset, and the related reference to the
15 "developmental period," are "'intended to limit coverage to an innate condition, rather than
16 a condition resulting from a disease or accident in adulthood.'" *Gomez v. Astrue*, 695 F.
17 Supp. 2d 1049, 1061 (C.D. Cal. 2010) (citation omitted).

18 Plaintiff's subaverage intellectual functioning resulted from *congenital* galactosemia.
19 *See* Tr. 21. When she was 13 years old, Plaintiff had a verbal IQ score of 67, a performance
20 IQ of 53, and a full-scale IQ of 56, suggesting "a level of functioning many years and grades
21 below [normal]." Tr. 181-82. A school psychologist who evaluated Plaintiff when she was
22 in sixth grade found her to have impaired social judgment (Tr. 179), noting that she
23 "identifies herself as different from other people, thinks bad thoughts and cries easily"
24 (Tr. 184). Plaintiff was extremely preoccupied with "put downs" by other students
25 disparaging her cognitive ability, that is, that she was "dumb, stupid or retarded." Tr. 179.
26 A special education social worker noted that Plaintiff's activities and interests outside of
27 school were "delayed when compared to other 13-year-olds," as she belonged to no social
28 clubs or groups, was isolated from her peer group, had only one close friend, and her hobbies

were limited to listening to music, playing video games, reading out loud to her mother, and playing with dolls. Tr. 179. Plaintiff was found to have communication and socialization skills as low as a 4-year-old, and daily living skills in the range of a 6-10 year-old. These adaptive functioning scores placed Plaintiff "in the delayed/deficient range when compared to other students her age." Tr. 180. Plaintiff was enrolled in special education classes since middle school, and completed high school with a modified diploma. Tr. 23-24, 348.

Contrary to the ALJ's conclusion (Tr. 23), "there was indeed ample evidence in the record that [P]laintiff had subaverage general intellectual functioning with deficits in adaptive function before [she] was 22 years old." *Blackwell v. Comm'r of Soc. Sec.*, No. CIV S-08-1454 EFB, 2010 WL 1267811, at *5 (E.D. Cal. Mar. 31, 2010); *see Lewis*, 2008 WL 191415, at *6 ("Completing high school does not bar a claimant from meeting Listing 12.05(C), particularly where the claimant was enrolled in special education classes."); *Gomez*, 695 F. Supp. 2d at 1060-61 (school records satisfied the early onset requirement where the claimant attended special education classes, tested below his grade level, and had difficulty relating to peers); *Walberg v. Astrue*, No. C08-0956-JCC, 2009 WL 1763295, at *9 (W.D. Wash. June 18, 2009) (participation in special education constitutes evidence of deficits in adaptive functioning during the developmental period); *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (the ALJ should have found that the claimant's impairment manifested itself during his developmental period where he attended special education classes and did not relate well with other children).

Defendant notes, correctly, that this Court's may not re-weigh the evidence and reject a finding of the ALJ supported by substantial evidence. Doc. 24 at 9. But the ALJ's decision does not address the psychological evaluation and academic assessment performed when Plaintiff was is middle school. Tr. 175-86. That evidence clearly "supports onset of [mental retardation] before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

The ALJ found Plaintiff's adaptive functioning inconsistent with mental retardation because she is literate, has a driver's license, and is able to live independently, handle her own hygiene, and keep her house clean. Tr. 23. The record is replete with evidence

1  demonstrating deficits in adaptive function during Plaintiff's developmental period, that is,
2  before age 22. Listing 12.05 requires nothing more. Moreover, courts have held that daily
3  activities such as reading, driving, and cleaning are not necessarily inconsistent with mental
4  retardation. *See Lewis*, 2008 WL 191415, at *7 (collecting cases).

5  The ALJ found that Plaintiff's mental impairments cause only mild restrictions in her
6  daily activities, social functioning, and concentration, persistence, and pace for simple tasks.
7  Tr. 22. But this finding does not preclude Plaintiff from meeting the listing for mental
8  retardation. In promulgating listing 12.05(C), and its requirement of IQs between 60 and 70,
9  the Commissioner expressly singled out individuals with mild mental retardation "for special
10 treatment in determining entitlement to disability benefits." *Brown v. Sec'y of HHS*, 948
11 F.2d 268, 270 (6th Cir. 1991); *see Gomez*, 695 F. Supp. 2d at 1053 & n.2 (noting that an IQ
12 between 55 and 70 indicates mild mental retardation).

13 Plaintiff's impairments do not meet listing 12.05, the ALJ concluded, because
14 "the evidence fails to show she has had a diagnosis of mental retardation." Tr. 23. This
15 constitutes legal error. Listing 12.05 "does not require a diagnosis or finding of 'mental
16 retardation,' but relies instead on valid IQs in conjunction with other evidence to establish
17 'subaverage general intellectual functioning.'" *Gomez*, 695 F. Supp. 2d at 1057-58 (citing
18 SSR 83-19, 1983 WL 31248, at *2 (1983)); *see Rowens*, 2010 WL 3036478, at *3;
19 *Applestein-Chakiris v. Astrue*, No. 09cv00009 BTM(WMc), 2009 WL 2406358, at *8
20 (S.D. Cal. Aug. 5, 2009); *Maresh*, 438 F.3d at 899; *Christner v. Astrue*, 498 F.3d 790, 793
21 (8th Cir. 2007).

22 Defendant asserts that because Plaintiff was diagnosed with borderline intellectual
23 functioning – "something other than mental retardation" – she does not meet listing 12.05.
24 Doc. 24 at 8. Defendant cites no legal authority in support of this assertion. Nor is it
25 supported by the regulations. "[A] claimant must satisfy a set of medical findings in order
26 to make out a claim under other listings, but 12.05 is different. It only requires that a
27 claimant's impairment satisfy a diagnostic description." *Blackwell*, 2010 WL 1267811,
28 at *5. Stated differently, a claimant can meet listing 12.05(C) "without having to

1 demonstrate a disabling, or even severe, level of mental functioning impairment." *Gomez*, 2 695 F. Supp. 2d at 1057 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00(A), 12.05(C)). 3 The fact that Plaintiff has been diagnosed with borderline intellectual functioning does not 4 preclude her from satisfying the listing for mental retardation. *See Lewis*, 2008 WL 191415, 5 at *5 (the argument that a claimant must show intellectual functioning below the range of 6 borderline through some manner other than IQ scores "finds no support in Listing 7 12.05 (C)"); *Gustafson*, 2010 WL 1267787, at *6 (plaintiff diagnosed with borderline 8 intellectual functioning satisfied listing 12.05(C)).

9 The ALJ accepted the opinion of Dr. Edward Jasinski (Tr. 22), who testified at the 10 initial hearing that Plaintiff's impairments do not meet a listed impairment (Tr. 365). But 11 Dr. Jasinski did not provide the basis for that opinion. Nor did he address the listing for 12 mental retardation and the record evidence demonstrating that impairment. When the entire 13 record is considered as a whole, *see Ryan*, 528 F.3d at 1198, Dr. Jasinski's opinion of no 14 listed impairment does not constitute substantial evidence.

15 In concluding that Plaintiff's impairments do not meet listing 12.05, the ALJ 16 "considered the opinions of the State agency medical consultants who evaluated this issue 17 at the initial and reconsideration levels of the administrative review process and reached the 18 same conclusion." Tr. 23. The initial and reconsideration levels of review were based on 19 a psychological screening evaluation performed by Dr. Janine Marinos. Tr. 72, 78, 205-08. 20 She offered no opinion as to whether Plaintiff's impairments meet the listings, and actually 21 deferred a diagnosis due to Plaintiff's apparent lack of effort (Tr. 208). The limited 22 evaluation of Dr. Marinos (Tr. 207) does not constitute substantial evidence. *See Blackwell*, 23 2010 WL 1267811, at *5 (reversing ALJ's decision even where state agency consultants 24 opined that the claimant did not meet listing 12.05).

25 Defendant contends that Plaintiff's ability to hold certain jobs for several months at 26 a time negates a finding that she has significant deficits in adaptive functioning. Doc. 24 27 at 9. But whether a claimant meets a listed impairment at step three of the evaluation process 28 is determined without consideration of her "age, education, and *work experience*." 20 C.F.R.

416.920(d) (emphasis added); *see Fanning*, 827 F.2d at 634; *Isham v. Astrue*, No. 3:08-CV-423, 2010 WL 1957362, at *4 (E.D. Tenn. Jan. 13, 2010) ("If Plaintiff indeed had an impairment or combination of impairments that met or equaled the definition of mental retardation in § 12.05(C), then Plaintiff was under a disability and there was no need for the ALJ to consider her age, education, or work experience or to make a determination of RFC.").

Defendant's reliance on *Novy v. Astrue*, 497 F.3d 708 (7th Cir. 2007), is misplaced. Doc. 24 at 10. The claimant in that case failed to "demonstrate 'a physical or other mental impairment imposing an additional and significant work-related limitation of function.'" *Id.* at 709 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)). Plaintiff suffers from severe depressive disorder. Tr. 21. This additional impairment satisfies the second prong of the paragraph C criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); *see Fanning*, 827 F.2d at 633.

In summary, the ALJ erred in concluding that Plaintiff does not meet listing 12.05(C). Plaintiff's mental retardation manifested itself during her developmental period, and Plaintiff has IQ scores below 70 and severe depressive disorder. Plaintiff satisfies the listing for mental retardation.

### B.   The Remand Decision.

The decision to remand for further development of the record or for an award benefits is within the discretion of the Court. *See Reddick v. Charter*, 157 F.3d 715, 728 (9th Cir. 1998); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Under the law of this Circuit, the Court must "direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." *Varney v. Sec'y of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988) (citations omitted). "This rule recognizes the importance of expediting disability claims." *Gustafson*, 2010 WL 1267787, at *6.

Plaintiff applied for supplemental security income more than five years ago, and the record is fully developed. Plaintiff has shown at step three of the evaluation process that she

meets the listing for mental retardation. She is therefore "presumed disabled, and no further inquiry is necessary." *Baxter v. Sullivan*, 923 F.2d 1391, 1395 (9th Cir. 1991). The case will be remanded for an award of benefits. *See Gustafson*, 2010 WL 1267787, at *7; *Frazier*, 2010 WL 3910331, at *5.

**IT IS ORDERED:**

1. Defendant's decision denying benefits is **reversed**.

2. The Clerk is directed to remand the case for an award of benefits.

DATED this 12th day of November, 2010.

*David G. Campbell*
United States District Judge